**RICHARDSON, an Infant, Etc v FELT et**

Ohio Appeals, 7th Dist, Mahoning Co

Decided Sept 29, 1933

Barnum, Hammond, Stephens & Hoyt, Youngstown, for plaintiff in error.

Xury Wilkins, Youngstown, and Elmer T. Phillips, Youngstown, for defendants in error.

## OPINION

By ROBERTS, J.

We are somewhat handicapped in a statement of the facts in this case by reason of the fact that the bill of exceptions has been lost and the case submitted without the presence of that bill.

One of the grounds of error relied upon in the prosecution of the error proceeding originally was the weight of the evidence. That proposition has been abandoned by the plaintiff in error, presumably for the reason that that proposition was not recognized, although involved in a consideration of the other case.

On the 30th day of July, 1930, at about four o'clock in the afternoon on a pleasant Sunday, the defendant Puncec operated his automobile in an easterly direction upon the Youngstown-New Castle road, or route 422, as it is ordinarily known, having as guests riding with him this little boy and several other persons. Perhaps it is incidentally worth remarking that this man who took out other peoples' children in crowded traffic on this day was paralyzed from his waist down. It is not observed that the pleadings state the precise age of the boy, and, as said, we have not the bill of exceptions to refer to. He was, however, concededly a youth of tender years. When Puncec and his automobile reached four corners known as Coitsville, he crossed from his right hand side, or the southerly side of this road, to the left hand side, and drove into a gasoline station at the northwest corner of the intersection of this Route 422 and the intersecting road, known as the Hubbard-Struthers Road. He stopped at the third of three gasoline pumps, or the most easterly one of the three, procured some gasoline and then started his automobile in an easterly direction, proceeded out into the Struthers-Hubbard Road, just northerly from the intersection, turning his car in a southerly direction. He had reached a point practically under a traffic light located in the middle of the intersection of these two streets, when his automobile was struck by an automobile proceeding in a westerly direction, operated by the plaintiff in error, William Richardson, a young man, and who was then accompanied by several other young men.

The evidence discloses that these cars came into collision, the Richardson car striking the left side of the Puncec car, as a result of which both cars were overturned and this little boy lost an eye as a result of the accident. The Richardson car was approaching at a rate of speed designated as being from thirty-five to forty miles an hour. The evidence shows that Richardson had an unobstructed view of this intersection for several hundred feet, yet he made no effort to lessen the speed of his car or do anything to avoid a collision until he was perhaps seventy-five feet from the point of the collision, when he blew his horn, and when twenty-five feet away claims to have

made some effort to deviate his car to the right and go around the Puncec car.

It is wholly apparent from the facts in this case that Richardson had a clear view of the intersection and the approach of the Puncec car to the center of the intersection for several hundred feet, and even where the Puncec car was at the time of the collision Richardson had perhaps forty feet of improved pavement upon which to have deviated his car to the right and avoided a collision. Richardson either saw or should have seen the presence of the Puncec car in the intersection in the exercise of proper care.

Puncec claims that he looked as he drove out into the intersection and did not see a car approaching. It is wholly apparent, so far as he is concerned, that the Richardson car must have been in close proximity and in plain view, and if he had looked he would have seen the Richardson car, and was negligent in proceeding to the point where the collision happened, or if he did not see it he was negligent in not looking, but, as stated before, there is no question of the weight of the evidence in this case, so far as the verdict of the jury is concerned in finding against these defendants.

It is claimed that prejudicial error occurred in several respects in the trial. It is said that testimony of an engineer by the name of Todd was improperly permitted to be introduced to the jury. It is a little difficult to understand just when this testimony was accepted. It is said in brief it was in rebuttal. This witness, Todd, had previously testified at considerable length. There was introduced in this case a large map drawn to a scale, and the plaintiff evidently in an effort to more clearly present the facts to the jury, and in connection with the map, recalled Todd, who produced little slips of paper drawn to a scale corresponding in size to that of the map, and evidently these slips of paper representing the automobiles were propelled around on the map in view of the jury so that the jury might better, perhaps, comprehend just how the accident did happen. It is claimed that this evidence was imprpoerly admitted at that time. Whether it was rebuttal or not, the introduction of testimony is a matter within the sound discretion of the trial court.

It is claimed in behalf of the other party that this evidence was introduced to contradict or explain certain testimony brought out in rebuttal upon the other side. Whatever the fact may be, it is not apparent in this case that the introduction of this testimony was reversibly prejudicial to any party in the case, and reversible error is not found upon that proposition.

Again, it is claimed that the trial court erred in not explicitly stating to the jury in the instructions that this route No. 422 was a main thoroughfare and presumably had the right of way ordinarily over the other road. Both of these roads were improved roads, with a concrete pavement twenty feet in width. The court spoke at considerable length to the jury upon this matter and said that it had no right to instruct the jury as to which of these roads, if either, was a main thoroughfare, that so to do would be instructing the jury upon a proposition of evidence which was the province of the jury to determine and not the right of the court.

Perhaps the court found itself under the same difficulty that this court has, and like this court did not know for certain whether it was a main highway or not. That which determined the fact as to whether certain improved roads are main thoroughfares or main market roads and so forth, seems not to depend so much upon the construction and nature of the road as upon the fact whether they have been so designated as such by the proper authority. The evidence upon this matter was at least obscure.

The court proceeded further in the manner objected to and instructed the jury somewhat with regard to the duties of the operators of these automobiles at a street or road intersection under the principles or rules of the common law. While not wholly endorsing what the court said in this respect, we are of the opinion that what the court said and what it did not say in this respect in the manner complained of was not reversibly prejudicial, because the issue presented and what constituted negligence and who, if anyone, was negligent did not depend upon who had the right to cross first over this intersection as between these two colliding automobiles. Neither one of the operators of these cars paid any attention to the other car.

This is not a case where the operator of one car seeks to recover because of the negligence of the other, or the other seeks to recover upon a cross petition and the respective rights of the parties as to who may proceed over a crossing are involved. Here is simply a plain proposition of negligence. Puncec was out in the middle of the street, and drove out there into this intersection with the approaching Richardson car in plain view. Richardson, on the other hand, without giving any regard to the

presence or rights of Puncec's car, which he saw or should have seen, and without exercising the opportunity which was his to go around the car, crashed into it with the resulting injury to this boy.

We do not see that the rules as to who has the precedence over an improved road crossing have much, if anything, to do with this case. Neither of the parties were paying any attention or giving any regard to questions of that kind. So that we reach the conclusion that there was nothing reversibly prejudicial so far as the conduct of the other was concerned in that matter, or in the instructions of the court upon this subject.

. Another proposition of alleged reversible error was the introduction of certain testimony in the case. While evidently not admitted in the answer of the defendant that the boy lost an eye in this accident, there was never any dispute upon that proposition. It was conceded to be the fact. As stated before, perhaps, the allegations of the petition and the amended petition of the plaintiff in this action are unusually obscure. There was a motion filed and an amended petition resulted. The father does not set out specifically what expense he has been subjected to in the care and treatment of this boy. He does not allege, perhaps, that he has paid any expenses. That is not important. There is something in the way of allegations as to future conditions which will be matters of damage to the father, which necessarily were considerably speculative, and without an opportunity to peruse the bill of exceptions or read the instructions of the court to the jury, we do not know how much was permitted in evidence regarding these various allegations or what the instructions of the court were in connection therewith, as to what the jury might properly consider as elements of damage in the case, but the issue primarily and fundamentally was, excepting the proposition now that there was negligence and a liability, that the little boy, without any negligence on his part or the part of his father, lost an eye. Now, with that conceded and an undisputed proposition there was not anything in the way of testimony which was really proper except to determine the damage.

On page 45 of the record we find, as stated in brief, that this question was asked:

"Q. What was wrong with his head?
A. As a result of the crash the boy lost his eye.
Q. Was he injured?
A. Yes, sir.
Q. Where was he injured?
A. The eye.
Q. What was wrong with the eye?"

Objections and exceptions were being constantly made to this testimony.

"A. Well, it was hanging on the outside of his face, hanging down his face.
Q. The eye was, you mean?
A. Yes, sir."

Page 168:
"Q. Were the lids torn in some manner that made it necessary for you to build them back up?
A. They were cut and torn from their attachment by the nose; you see these wounds weren't clear cut wounds like one makes in surgery. They were lacerated wounds."

Page 126:
"Q. Did you go with Mike Felt to the hospital?
A. Yes, sir.
Q. Was he crying and was he in pain, if you know?
A. I guess he was in pain.
Q. What did you see on his face that day?
A. Well, I saw his face was all cut, his cheek and his eye.
Q. Where did you see his eye hurt?
A. I saw his eye drop on the street."

We thus find, and there is more of it, a persistent effort was made through the testimony of several witnesses to bring before the attention of the jury the gruesome conditions involved in this accident. The issue was simply for an estimate by the jury of the damage which the father had sustained. The bringing out of this testimony could not otherwise than excite the sympathy of the jury for the unfortunate boy, and also indignation against whoever might be found responsible for the accident.

The verdict was two thousand dollars in this case. The evidence shows that in the providing of a glass eye for the boy such eye will have to be changed from time to time during his growth to manhood, and that some surgical operation will be necessary to cut the muscles out that have grown into the socket of the eye, and again without the presence of the bill of exceptions this court does not know much about what might properly be considered as reasonable damages in this case, but it is reasonable to

conclude that the verdict of the jury was augmented by the reason of this testimony, which evidently was purposely obtained by reason of the manner in which the witnesses were interrogated, and this we think was prejudicial. The evidence had no proper place in the case, and it evidently had a resulting effect in its introduction. For this reason the cause is reversed.

Judgment reversed.

FARR and POLLOCK, JJ, concur in the judgment.